# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA J. ROBERTS,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 10-554 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Pamela J. Roberts ("Roberts") filed this action on April 15, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on June 18 and August 17, 2010. (Dkt. Nos. 5, 7.) On January 25, 2001, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument. The decision of the Commissioner is affirmed.

///
///
///
///
///

# I.

# **PROCEDURAL BACKGROUND**

On November 14, 2007, Roberts filed an application for disability insurance benefits alleging a disability onset date of July 1, 2007. Administrative Record ("AR") 14. The application was denied initially and upon reconsideration. AR 14. Roberts requested a hearing before an Administrative Law Judge ("ALJ"). AR 14. On October 22, 2009, the ALJ conducted a hearing at which Roberts and a vocational expert testified. AR 14, 29-52. On December 9, 2009, the ALJ issued a decision denying benefits. AR 14-24. On March 12, 2010, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Roberts met the insured status requirements through June 30, 2011. AR 16. Roberts has the following severe combination of impairments: "asthma, osteoporosis, and stomach problems (possibly irritable bowel syndrome)." AR 16. The ALJ found Roberts had the residual functional capacity to perform light work, i.e., to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday, but could only occasionally stoop, bend, crouch, kneel, crawl, squat, and climb ladders and was precluded from fumes, dusts, gases, odors, and poor ventilation. AR 18-19. The ALJ found Roberts was capable of performing her past relevant work as a construction cleaner, teller, guard, and receptionist. AR 23.

## C. Listing 3.02A

The ALJ found that the medical findings did not meet or equal any medical listing. AR 18. Roberts argues the ALJ failed to evaluate properly whether her asthma met or equaled the criteria of Listing 3.02A.[1]

---

[1] Pursuant to Listing 3.03A, asthma with chronic asthmatic bronchitis is evaluated under the criteria for chronic obstructive pulmonary disease in Listing 3.02A. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03A.

3

The claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

"For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability. . . ." *Tackett*, 180 F.3d at 1100 (citation omitted).

Listing 3.02A requires chronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in the listing corresponding to the claimant's height. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A. Roberts is 65 inches tall. AR 399, 518. For a person 65 inches tall, Listing 3.02A requires a FEV1 equal to or less than 1.25. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A.

The record contains two Spirometry Reports, from March 6, 2008, and October 29, 2009, which contained measurements of Roberts' FEV1 premedication and postmedication. AR 399, 518. On March 6, 2008, her

premedication FEV1 was 1.21.  AR 399.  Her postmedication FEV1 was 1.33. AR 399.  Roberts reported that she had experienced a recent exacerbation of asthma.[2]  AR 391.  On October 29, 2009, her premedication FEV1 was 1.23, and her postmedication FEV1 was 1.29.  AR 518.  On both dates, Roberts' postmedication FEV1 values (1.33 and 1.29) exceeded the maximum value of 1.25 required to meet Listing 3.02A pursuant to the criteria in 3.00(E).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A.  Roberts cites no other evidence in support of her contention that her asthma meets Listing 3.02A.   Accordingly, Roberts has not met her burden of demonstrating her asthma met or equaled Listing 3.02A.

As the ALJ noted, the state agency physicians did not find that Roberts' asthma met or equaled a listing.  AR 22, 320, 365.  They found no evidence of frequent or severe asthma exacerbation for 12 months.[3]  AR 320, 365.  The ALJ stated he found nothing in the record to contradict the state agency physicians' judgment.  AR 22.

### D.     Examining Physician's Opinion

Roberts argues the ALJ erred at step two of the sequential analysis in

---

[2] "The values in paragraphs A and B of 3.02 must only be used as criteria for the level of ventilatory impairment that exists during the individual's most stable state of health (*i.e.*, any period in time except during or shortly after an exacerbation)."  20 C.F.R. Pt. 404, Subpt. 1, § 3.00(E).  Based on Roberts' report of a recent exacerbation of asthma on March 6, 2008, the Commissioner argues the results should not be considered.

[3]  In November 2004, Roberts reported that, since age 3, she had asthma which was well controlled with medications.  AR 281.  She continued to do well, with an exacerbation in December 2005 when she did some moving in a dusty environment.  AR 264, 266.  There is no evidence of pulmonary symptoms in the medical record near the alleged onset date of July 1, 2007.  AR 376 (normal breath sounds, no wheezing, no ronchi).  She experienced an acute exacerbation of asthma in February 2008 through March 4, 2008.  AR 382-83, 386-87. However, on March 6, 2008, her breathing was normal and she felt much better. AR 391-92.  In February 2009, Roberts had symptoms of fever, sore throat and cough, and was diagnosed with pneumonitis.  AR 432-33.  In subsequent visits, respiratory movements were normal with the exception of wheezing in August 2009 which resolved by the next visit in September 2009.  AR 436-37, 504, 506-07.  After her hearing before the ALJ on October 22, 2009 (AR 29), Roberts apparently experienced an exacerbation.  AR 518.

failing to find that her depression constituted a severe impairment. JS 12-16; AR 17. She contends the ALJ improperly rejected the opinion of examining psychiatrist Dr. Bagner that depression resulted in a mild to moderate limitation on her ability to handle normal stresses at work. AR 324.

At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[4] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v. Chater*, 80 F.3d at 1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it

---

[4] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Social Security Ruling ("SSR") 85-15. Social security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and quotation marks omitted). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.

Even assuming the ALJ erred in failing to find that Roberts' depression constituted a severe impairment, it could only prejudice Roberts at a later step in the sequential analysis because step two was resolved in her favor. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). As discussed above, the ALJ did not err in finding that Roberts did not meet or equal a listed impairment at step three.

Further, the ALJ did not err in making his residual functional capacity assessment. The ALJ stated he considered all functional limitations resulting from medically determinable impairments, including those he found to be nonsevere. AR 18. The ALJ's RFC assessment contained no mental limitations. AR 18-19. The ALJ summarized and gave "great weight" to Dr. Bagner's psychiatric evaluation. AR 18. Dr. Bagner found Roberts had depressive disorder and opined she had no limitations interacting with supervisors, peers, or the public; zero to mild limitations maintaining concentration and attention, and completing simple tasks; mild limitations completing complex tasks and completing a normal workweek without interruption; and mild to moderate limitations in handling normal stresses at work. AR 324, 327. Dr. Bagner assessed a Global Assessment of Functioning score of 72. AR 323. As the ALJ

noted, a score of 72 means "no more than slight impairment in social, occupational or school functioning." AR 17 & n.1; American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (Text Revision) 34 (4th ed. 2000) ("DSM IV-TR) ("If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument).").

### E. Physical Residual Functional Capacity

Roberts argues the ALJ erred in assessing her physical residual functional capacity finding that she could perform a reduced range of light work based solely on the opinion of a non-examining state agency review physician "[i]n a case such as the instant one in which there is no residual physical functional capacity assessment from either a treating or examining source."[5] JS 11.

The ALJ stated he gave "greatest weight" to the opinion of the state agency physicians. AR 22. In December 2007, based on her review of medical records, Dr. Taylor-Holmes opined Roberts could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday, but only occasionally stoop, bend, crouch, kneel, crawl, squat, and climb ladders, and had to avoid concentrated exposure to fumes, dusts, gases, odors, and poor ventilation. AR 313-20. Dr. Hartman reaffirmed those findings in May 2008 after review of her

---

[5] After the ALJ rendered his decision on December 9, 2009 (AR 11), Roberts submitted a letter dated January 13, 2010, from a treating physician, Dr. El-Hajjaoui, to the Appeals Council. AR 7. Dr. El-Hajjaoui stated he had treated Roberts since June 2005 and she is disabled due to asthma. *Id.* "[I]f new and material evidence is submitted, . . . the Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council concluded Dr. El-Hajjaoui's letter concerned disability after the date of the ALJ's decision, December 9, 2009, and advised her to apply for benefits if she wanted the Commissioner to consider disability after December 9, 2009. AR 2. The Appeals Council designated the ALJ's decision as the final decision of the Commissioner. AR 1.

medical records. AR 365. State Agency physicians are experts in Social Security disability evaluation and an ALJ must consider their opinions. 20 C.F.R. § 404.1527(f)(2).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, SSA*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). To the extent Roberts argues to the contrary, her argument is rejected. Roberts cites the following sentence from the opinion in *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993): "Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual." In *Penny*, the medical expert opined that the claimant could perform sedentary work. *Id.* at 957. The medical expert contradicted the opinion of an examining physician that the claimant could not work. *Id.* In addition, the claimant testified concerning his debilitating pain, which was supported by his treating records. *Id.* at 957-58. The nonexamining physician's opinion did not constitute a valid basis on which to reject the examining physician's opinion and claimant's testimony. *Penny* does not stand for the proposition that an ALJ may never rely on a medical expert's opinion.

Here, the ALJ accurately summarized the objective medical evidence including Roberts' treatment record. AR 16-18, 20-23. He found that the state agency physicians' opinions were "reasonable and consistent with the objective medical evidence."[6] AR 22. During the relevant time period, the ALJ found "no

---

[6] *See* footnote 3.

9

inconsistent medical source statement and no statement by a treating physician the claimant is unable to work."[7] AR 23. The ALJ also found Roberts had a "somewhat normal level of daily activity," including exercise.[8] AR 20. Under these circumstances, the opinions of state agency review physicians may constitute substantial evidence. *Thomas*, 278 F.3d at 957. Roberts makes no showing or argument that the ALJ was required to order a consultative examination under 20 C.F.R. § 404.1519a.

### F. Roberts' Subjective Symptom Testimony

Roberts argues the ALJ failed to properly evaluate her subjective pain testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted). The ALJ found Roberts had medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms. AR 20.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her

---

[7] Dr. El-Hajjaoui's medical records from November 2004 through October 2009 are in the administrative record. AR 237-312, 338-63, 366-519. Prior to the alleged onset date of July 1, 2007, the records indicate Dr. El-Hajjaoui gave her a period of disability during a 6-month time frame, September 2006-March 2007, when she was in the process of divorce and her son was in a coma due to head injury in a motorcycle accident. AR 257, 255, 253, 251, 248. The disability was "to give her time to control her adjustment disorder" and was not based on asthma. AR 257. As the Appeals Council noted, Dr. El-Hajjaoui made an assessment of disability after the date of the ALJ's decision.

[8] Roberts reported that she rides a bicycle in the park, walks every day, dances twice a week, exercises at Curves with her friends, and plays games with her grandchildren. AR 173-74.

symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[9] quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found Roberts' "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 20.

---

[9] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han*, 882 F.2d at 1457.

Although Roberts contends the ALJ relied solely on her daily activities, the ALJ discounted her credibility for three reasons: (1) Roberts received routine, conservative treatment; (2) the objective medical evidence did not support the alleged severity of the symptoms; and (3) activities of daily living that were inconsistent with the subjective allegations and which were necessary to obtain employment. AR 20, 23.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Roberts' asthma and pain were controlled with medication. Roberts has not addressed the ALJ's finding or identified treatment that was not conservative.

Lack of objective medical evidence to support subjective pain allegations may be considered but is not sufficient alone to discount a claimant's credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Roberts does not address the ALJ's finding that her subjective complaints were not supported by the objective medical evidence. As discussed above in connection with Roberts' physical residual functional capacity, the ALJ accurately summarized the medical records and his finding is supported by substantial evidence.

Roberts argues that the ALJ's reliance on her activities of daily living is improper. As discussed above, Roberts reported that she rides a bicycle in the park, walks every day, dances twice a week, exercises at Curves with her friends, and plays games with her grandchildren. AR 173-74. In addition, the ALJ cited her testimony that she could stand/walk for six hours with normal breaks on at least some days and can sit for several hours with normal breaks. AR 19, 43-44.

///
///
///
///

These activities are, as the ALJ found, relevant to her ability to work. The ALJ did not err in his credibility assessment.[10]

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 9, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[10] Even assuming one of the ALJ's reasons for discounting Roberts' credibility was unsupported, remand would not necessarily be warranted. In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. However, when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*" *Id.* at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson*, 359 F.3d at 1197. Here, in light of the ALJ's valid reasons for discounting Roberts' credibility and the record as a whole, substantial evidence supported the ALJ's credibility finding. *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony).